UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PROFIT POINT TAX TECHNOLOGIES, INC., )
)
Plaintiff. )
)
v. ) Case No.
)
DPAD GROUP, LLP; )
JOHN MANNING; and DANIEL STEELE; )
)
Defendants. )

## COMPLAINT AND DEMAND FOR JURY TRIAL

### PARTIES

1. Plaintiff Profit Point Tax Technologies, Inc. ("PPTT") is a Wisconsin corporation with a principal place of business located at 2055 Woods Road, Verona, WI 53593.

2. Defendant DPAD Group, LLP ("DPAD") is a Delaware limited liability partnership, with a place of business located at 1507 Cambridge Drive, Presto, PA 15142.

3. Defendant John Manning ("Manning") is a principal of DPAD and an individual who resides at 7919 Greentree Road, Bethesda, MD 20817.

4. Defendant Daniel Steele ("Steele") is a principal of DPAD and an individual who resides at 1507 Cambridge Drive, Presto, PA 15142.

### JURISDICTION

5. This is an action for, *inter alia*, trade secret misappropriation arising under the Defend Trade Secret Act (DTSA), 18 U.S.C. §§ 1831-1839. Jurisdiction as to these claims is conferred on the Court by 28 U.S.C. §§ 1331. This Court has supplemental jurisdiction over

Plaintiff's claims arising under state law under 28 U.S.C. § 13657, as those claims form part of the same case or controversy.

6. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**FACTUAL ALLEGATIONS**

8. PPTT is in the business of providing tax services to its clients. In addition to contracting directly with clients for these services, PPTT also works as a subcontractor for other entities performing tax services for clients. PPTT's clients consist mostly of corporations and other business entities. Fees between PPTT and these entities are typically shared based upon a subcontractor agreement.

9. Manning and Steele worked as independent contractors for PPTT. As independent contractors for PPTT, Manning and Steele each provided tax services for PPTT clients as well as for clients of other entities for which PPTT was a subcontractor. As independent contractors, Manning and Steele each additionally had use of a PPTT email address, PPTT's server, and other PPTT resources, and were able to market to potential clients under PPTT's name.

10. Manning and Steele were paid for the services they provided on PPTT projects pursuant to a revenue sharing agreement between the parties (the "Agreement").

11. Per the Agreement, percentages were paid to Manning and Steele on the basis of certain criteria such as the amount of work contributed on each project and the involvement of

successfully procuring the client. Any solicitation of clients under the name of PPTT became PPTT clients and were subject to the Agreement.

12. Manning and Steele, in reliance upon PPTT's commitment to distribute revenue in accordance with the Agreement, marketed tax projects under the trade name "PPTT", allowed PPTT to act as the contracting entity for tax projects, and performed section 199 tax services using the trade name "PPTT."

13. Manning and Steele solicited business on behalf of PPTT through use of PPTT's email address, website, and other such PPTT resources. One such solicitation was to Constellation Energy, a subsidiary company of Exelon (hereinafter referred to as "Exelon").

### PPTT's Confidential Information and Trade Secrets

14. Since its formation and inception in 2005, PPTT has developed and employed certain proprietary, confidential business plans (including a unique package of tax services), marketing strategies, and customer and business contact lists that are exclusive to PPTT and unique in the tax services industry.

15. PPTT's strong competitive position in the tax services market is the product of nearly 15 years of its development of proprietary and confidential information and protected trade secrets.

16. PPTT has invested significant resources, time and money into developing its unique niche and expertise in the marketplace, including but not limited to its business plans, marketing strategies, contact lists, and procuring access to the confidential information of a variety of companies, all of which in turn confer a competitive advantage on PPTT and all of which have significant commercial and economic value to PPTT.

17. PPTT has at all relevant times taken reasonable steps to preserve the confidentiality of the aforementioned proprietary information by, among other things, restricting access to such information to those persons with a need to know. In particular, PPTT carefully limits disclosures of its business plan and marketing strategies to possible customers, so as to preserve its competitive edge in the marketplace.

18. Through their trusted positions with PPTT, Manning and Steele were provided with access to PPTT's proprietary information.

### DPAD Exelon Project Conversion

19. On information and belief, Manning and Steele formed DPAD in 2015, approximately 2 years before their solicitation of Exelon on behalf of PPTT began.

20. DPAD also provides tax services to corporations and other business entities. As such, DPAD is a direct competitor with PPTT in the tax services market.

21. PPTT does not have any interest or involvement with DPAD. Manning and Steele have solicited and, on information and belief, are continuing to solicit clients on the behalf of DPAD in Pennsylvania.

22. Utilizing PPTT's resources, including but not limited to, confidential company information that was provided to PPTT, references of companies for which PPTT had performed work, and confidential PPTT work product as it related to Constellation Energy, Manning solicited Exelon under the name of PPTT to sell tax services to this entity. Specifically, Manning was introduced to current tax personnel at Exelon through connections of PPTT's former business partner Urish Popeck & Co. Once introduced to Exelon, Manning marketed a section 199 tax project under the trade name "PPTT," per the explicit terms of the Agreement.

23. Exelon agreed to pay PPTT for the tax services. Instead of allowing PPTT to act as the contracting entity for the Exelon tax project per the Agreement, whereby the section 199 tax services would be performed using the trade name "PPTT," Manning substituted a DPAD Group engagement letter in place of a PPTT engagement letter in order to procure Exelon as a client for his and Steele's own company – DPAD.

24. Manning and Steele did not advise PPTT, and therefore PPTT had no knowledge that Exelon was procured as its client. Manning and Steele did not advise PPTT, and therefore PPTT had no knowledge, that thereafter DPAD took Exelon over as a client.

25. A dispute arose between the parties relating to the Agreement. In order to resolve all remaining fee splitting disputes between them, Manning, Steele, and PPTT entered into a separate agreement dated February 2, 2016. At that time, neither Manning nor Steele advised PPTT that Exelon had been procured as its client and that PPTT would be entitled to collect a fee on the project. Accordingly, due to the failure to advise PPTT as to the existence of this client, Exelon was not included in resolution of this dispute which was memorialized in a Fee Splitting Agreement.

26. Upon PPTT's discovery of Exelon as a client and in response to PPTT's request for payment, Manning has represented that Exelon is a DPAD project, and accordingly PPTT would not be entitled to any fee split on this project.

27. Knowledge of the procurement of Exelon through use of PPTT resources was intentionally withheld from PPTT in an effort to avoid any fee split with PPTT and to retain all fees generated from the project to Manning, Steele, and DPAD's benefit.

28. On best information and belief, tax services have been completed on the Exelon project, and DPAD, Manning, and Steele have received payment for those services. No payment has been made to PPTT.

## COUNT I

### BREACH OF CONTACT
### (MANNING & STEELE)

29. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

30. PPTT entered into the revenue sharing agreement with Manning and Steele pursuant to which Manning and Steele solicited clients on the behalf of PPTT and performed tax services on behalf of PPTT for its clients, as well as for clients of other entities for which PPTT was a subcontractor, and in return Manning and Steele received compensation and were provided access to PPTT resources.

31. Under the revenue sharing agreement, clients solicited by Manning and Steele under PPTT became PPTT clients subject to the revenue sharing agreement.

32. Manning and Steele breached the revenue sharing agreement with PPTT when they solicited clients under the name of PPTT to sell tax services and then transferred those clients to DPAD, without any notice to PPTT, in an effort to retain all fees generated from the client for Manning , Steele, and DPAD's benefit.

33. As a direct and proximate result of the breach of the revenue sharing agreement, PPTT has suffered, and will continue to suffer, damages.

## COUNT II

### BREACH OF FIDUCIARY DUTY
### (MANNING & STEELE)

34. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

35. As independent contractors for PPTT, Manning and Steele had a confidential relationship with PPTT. At all relevant times, Manning and Steele solicited business on the behalf of PPTT through the use of PPTT's email address, website, and other such PPTT resources. These actions to solicit business by Manning and Steele on behalf of PPTT inspired PPTT's confidence that Manning and Steele would act in good faith and for PPTT's interest.

36. At all times relevant, because of this confidential relationship, Manning and Steele owed PPTT a fiduciary duty of loyalty and good faith to PPTT.

37. By their actions, Manning and Steele breached their fiduciary duties to PPTT by, *inter alia*, engaging in intentional and/or negligent conduct in order to advance their interests to the detriment of PPTT, and by failing to administer their duties to PPTT in good faith. Manning and Steele have retained for themselves clients, monies, and assets that rightfully belong to PPTT.

38. Manning and Steele's failure to act in good faith and for the benefit of PPTT in all matters for which they were involved was a real factor bringing about PPTT's injuries.

39. PPTT was harmed and damaged, and continues to suffer harm and damage, as a result of Manning and Steele's breach of fiduciary duty.

## COUNT III

### MISAPPROPRIATION OF TRADE SECRETS
### DEFEND TRADE SECRETS ACT (DTSA)
### (MANNING, STEELE & DPAD GROUP, LLP)

40. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

41. By virtue of their positions of trust and confidence with PPTT, Manning and Steele had access to PPTT's confidential and proprietary information and trade secrets, including but not limited to PPTT's business plans, marketing strategies, customer contacts and procuring access to the confidential information of a variety of companies. PPTT's confidential and proprietary information and trade secrets all relate to PPTT's services which are or are intended to be used in interstate or foreign commerce.

42. This confidential, proprietary and trade secret information, including but not limited to the business plan marketed by PPTT as the "PPTT Approach" derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

43. PPTT has at all relevant times taken reasonable steps to preserve the confidentiality of its proprietary information and trade secrets including, among other precautionary measures, restrict access to such information to those with a need to know.

44. Manning and Steele abused their access to PPTT's confidential information and trade secrets to misappropriate information for their benefit and the benefit of their company DPAD.

45. Manning and Steele disclosed PPTT's confidential information and trade secrets to DPAD without PPTT's knowledge, authorization and/or consent.

46. At all relevant times, DPAD knew and was charged with knowledge that Manning and Steele had access to and obtained PPTT's confidential information and trade secrets while they were independent contractors of and in a position of trust and confidence with PPTT.

47. On information and belief, DPAD knew that it could not lawfully receive PPTT's confidential information and trade secrets or use them for any purpose.

48. DPAD has knowingly benefited from PPTT's confidential information and trade secrets, which Manning and Steele obtained by virtue of their relationship of trust and confidence with PPTT. DPAD's misappropriation of PPTT's confidential information and trade secrets accelerated DPAD's entry into and competitive viability in PPTT's marketplace.

49. In violation of PPTT's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836 (DTSA), Defendants misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner alleged herein.

50. Defendants' misappropriation of the information was intentional, knowing, willful, malicious, fraudulent and oppressive.

51. As the direct and proximate result of Defendants' conduct, PPTT has suffered and will continue to suffer immediate and irreparable harm, including financial loss, loss of goodwill, and loss of the confidentiality of its proprietary information, for which it has no remedy at law, thereby entitling PPTT to [preliminary? and] permanent injunctive relief pursuant to the DTSA.

52. Defendants' conduct is willful, malicious and outrageous and undertaken with reckless indifference to the rights of PPTT, giving rise to punitive damages in the above-captioned matter, and entitling PPTT to preliminary and permanent injunctive relief pursuant to the DTSA.

53. As a direct and proximate result of having to commence the instant litigation against Defendants, PPTT has incurred, and will continue to incur, considerable attorneys' fees and costs.

## COUNT IV

### MISAPPROPRIATION OF TRADE SECRETS
### PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### (MANNING, STEELE & DPAD GROUP, LLP)

54. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

55. By virtue of their positions of trust and confidence with PPTT, Manning and Steele had access to PPTT's confidential and proprietary information and trade secrets, including but not limited to PPTT's business plans, marketing strategies, customer contacts and procuring access to the confidential information of a variety of companies.

56. This confidential, proprietary and trade secret information, including but not limited to the business plan marketed by PPTT as the "PPTT Approach" derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value form the disclosure or use of the information.

57. PPTT has at all relevant times taken reasonable steps to preserve the confidentiality of its proprietary information and trade secrets including, among other precautionary measures, restrict access to such information to those with a need to know.

58. Manning and Steele abused their access to PPTT's confidential information and trade secrets to misappropriate information for their benefit and the benefit of their company DPAD.

59. Manning and Steele disclosed PPTT's confidential information and trade secrets to DPAD without PPTT's knowledge, authorization and/or consent.

60. At all relevant times, DPAD knew and was charged with knowledge that Manning and Steele had access to and obtained PPTT's confidential information and trade secrets while they were independent contractors of and in a position of trust and confidence with PPTT.

61. On information and belief, DPAD knew that it could not lawfully receive PPTT's confidential information and trade secrets or use them for any purpose.

62. DPAD has knowingly benefited from PPTT's confidential information and trade secrets, which Manning and Steele obtained by virtue of their relationship of trust and confidence with PPTT. DPAD's misappropriation of PPTT's confidential information and trade secrets accelerated DPAD's entry into and competitive viability in PPTT's marketplace.

63. In violation of PPTT's rights under the Pennsylvania Uniform Trade Secrets Act, 12 Pa. C.S.A. §§ 5301-53308 (PUTSA), Defendants misappropriated the confidential, proprietary and trade secret information in the improper and unlawful manner alleged herein.

64. Defendants' misappropriation of the information was intentional, knowing, willful, malicious, fraudulent and oppressive.

65. As the direct and proximate result of Defendants' conduct, PPTT has suffered and will continue to suffer immediate and irreparable harm, including financial loss, loss of goodwill, and loss of the confidentiality of its proprietary information, for which it has no remedy at law, thereby entitling PPTT to permanent injunctive relief pursuant to the PUTSA.

66. Defendants' conduct is willful, malicious and outrageous and undertaken with reckless indifference to the rights of PPTT, giving rise to punitive damages in the above-captioned matter, and entitling PPTT to preliminary and permanent injunctive relief pursuant to the PUTSA.

67. As a direct and proximate result of having to commence the instant litigation against Defendants, PPTT has incurred, and will continue to incur, considerable attorneys' fees and costs.

## COUNT V

### UNFAIR COMPETITION
### (MANNING, STEELE & DPAD GROUP, LLP)

68. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

69. Manning, Steele, and DPAD have engaged in acts of unfair competition which have caused and will cause PPTT severe and serious financial injury by losing its competitive advantage in the marketplace, by undermining legitimate opportunities within the marketplace, and by intentionally damaging PPTT's goodwill, for which PPTT should be compensated and from which the Defendants should be enjoined.

70. Defendants Manning and Steele purposefully misappropriated and divulged PPTT's trade secrets, and other confidential and proprietary information to DPAD, a competitor of PPTT in order to destroy PPTT's competitive advantage in the marketplace and to significantly and irreparably damage PPTT's business.

71. Defendants' collective actions have been willful and wanton and have been carried out with a specific intent to harm PPTT in the conduct of its business and to gain an unfair competitive advantage over PPTT.

72. As a result of Defendants' conduct, PPTT has suffered and will continue to suffer substantial and irreparable damages, which also entitles PPTT to preliminary and permanent injunctive relief.

## COUNT VI

### UNJUST ENRICHMENT
### (MANNING, STEELE & DPAD GROUP, LLP)

73. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

74. Manning, Steele, and DPAD procured clients through the benefit of marketing as PPTT.

75. Manning, Steele, and DPAD have knowledge of and accepted and retained the benefit of procuring clients through use of marketing as PPTT by collecting payment from clients for services provided and not providing any fee or payment to PPTT.

76. It is inequitable for Manning, Steele and DPAD to retain this benefit and PPTT has been harmed as a result.

## COUNT VII

### TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS
### (MANNING, STEELE & DPAD GROUP, LLP)

77. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

78. Manning and Steele solicited clients as PPTT to form prospective relationships between the clients and PPTT. Thereafter, Manning, Steele, and DPAD converted those clients to be DPAD clients and direct revenue from those clients to DPAD.

79. Manning, Steele, and DPAD intentionally did these acts to prevent a relationship between PPTT and prospective clients to retain the benefit of the fees paid for these projects and to avoid any payment to PPTT.

80. As a direct and proximate result of this conduct, PPTT has suffered, and will continue to suffer, damages.

## COUNT VIII

### CONVERSION
### (MANNING, STEELE, and DPAD GROUP, LLP)

81. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

82. Clients solicited by Manning, Steele, and DPAD under PPTT's name and/ or by Manning and Steele in their role of independent contractors of PPTT are PPTT clients.

83. Accordingly, PPTT is due the fees generated by these clients.

84. Manning, Steele, and DPAD retained the fees generated by these clients without permission or authority to do so.

85. As a direct and proximate result of this conduct, PPTT has suffered, and will continue to suffer, damages.

## COUNT IX

### INTENTIONAL MISREPRESENTATION
### (MANNING, STEELE, & DPAD GROUP, LLP)

86. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

87. Manning, Steele, and DPAD made false or misleading representations as to the clients that would be subject to the Fee Splitting Agreement and clients that had been solicited on the behalf of PPTT, and thereafter converted to DPAD clients, which were material facts, to induce PPTT to sign the Fee Splitting Agreement without any compensation relating to these clients.

88. Manning, Steele, and DPAD knew these statements to be false and made them to PPTT to deceive and encourage PPTT to sign the Fee Splitting Agreement in its current form excluding these clients.

89. PPTT relied on Manning, Steele, and DPAD's representations to its detriment, and has been harmed as a result.

## COUNT X

### NEGLIGENT MISREPRESENTATION
### (MANNING, STEELE, & DPAD GROUP, LLP)

90. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

91. Manning, Steele, and DPAD made a representation of material fact as to clients solicited on the behalf of PPTT to be included in the Fee Splitting Agreement.

92. Manning, Steele, and DPAD's representation was false as certain clients which had been solicited as PPTT clients were not included in the Fee Splitting Agreement, and Manning, Steele, and DPAD should have known of its falsity.

93. PPTT justifiably relied on the representation in signing the Fee Splitting Agreement and as a result has incurred damages.

## COUNT XI

### AN ACCOUNTING
### (MANNING, STEELE, & DPAD GROUP, LLP)

94. PPTT incorporates by reference all the preceding paragraphs as if fully restated herein.

95. Upon best information and belief, Manning, Steele, and DPAD received or will receive revenue in a certain sum in connection with clients solicited by Manning or Steele on behalf of PPTT and converted into DPAD clients, all of this revenue is due to PPTT before independent contractor payout pursuant to the revenue agreement.

96. The amount of money due and owing from Manning, Steele, and DPAD for these PPTT projects pursuant to the revenue agreement is unknown in its entirety to PPTT and cannot be ascertained without an accounting of the compensation received by Manning, Steele, and DPAD in connection with these clients.

97. Manning, Steele, and DPAD have access to such information, but have not provided PPTT with the same.  PPTT does not have access to such information.

98. As a proximate result of Manning, Steele, and DPAD's failure to provide an accounting, an Order from the Court requiring Manning, Steele, and DPAD to provide a full accounting of compensation received by Manning, Steele, and/or DPAD for all tax service clients is necessary and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Profit Point Tax Technologies, Inc. hereby respectfully requests that the Court enter judgment in its favor and against Defendants individually, jointly, and severally as follows:

(1) Permanently enjoining Defendants from accessing, using and disclosing any of PPTT's confidential, proprietary and trade-secret information to all individuals and entities;

(2) Awarding PPTT compensatory, consequential and punitive damages in an amount to be determined at the trial of the above-captioned matter;

(3) Awarding PPTT its attorneys' fees and costs incurred in bringing the instant litigation;

(4) Ordering that Defendants be disgorged of all profits Defendants realized or will realize as a consequence of their unauthorized disclosure or use of PPTT's confidential, proprietary and trade-secret information, misrepresentations, and other improper conduct;

(5) Directing Defendants to immediately return to PPTT's possession and control, all PPTT-related documents and information, whether in printed or electronic form, or otherwise, whether originals or copies;

(6) Ordering an accounting of all compensation received by Manning, Steele, and/or DPAD for all tax service clients is necessary and proper.

(7) Awarding PPTT such other and further relief as the Court deems just and appropriate.

Dated this 14th day of June, 2019.

    Respectfully submitted,

    */s/ Audrey K. Kwak*
    Audrey K. Kwak (Pa. I.D. No. 200527)

    **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
    U.S. Steel Tower, 44th Floor
    600 Grant Street
    Pittsburgh, PA  15219
    (412) 566-2581 (telephone)
    (412) 566-6099 (facsimile)
    akwak@eckertseamans.com

    OF COUNSEL

    David Willis, Esq.
    (*Pro Hac Vice* Admission Pending)

    **ECKERT SEAMANS CHERIN & MELLOTT, LLC**
    Two International Place, 16th Floor
    Boston, MA  02110
    (617) (342-6809
    127 Dorrance Street, 3rd Floor

Providence, RI  02903
(401) 272-1108
dwillis@eckertseamans.com

Rachel E. Moynihan, Esq.
(*Pro Hac Vice* Admission Pending)

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Two International Place, 16th Floor
Boston, MA  02110
(617) 342-6844
rmoynihan@eckertseamans.com