IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PROFIT POINT TAX TECHNOLOGIES, INC., )
)
Plaintiff, )
)
v. )
)
DPAD GROUP, LLP, JOHN MANNING, and DANIEL STEELE, )
)
Defendants. )
)
_____ )
)
JOHN MANNING and DANIEL STEELE, )
)
Counter Claimants, )
)
v. )
)
PROFIT POINT TAX TECHNOLOGIES, INC. and PATRICK SWEET, )
)
Counter Defendants. )

Civil Action No. 19-698
District Judge William S. Stickman
Magistrate Judge Maureen P. Kelly

Re: ECF Nos. 259 and 274

## REPORT AND RECOMMENDATION

I.    **RECOMMENDATION**

This case arises out of a dispute over who is owed fees for specialized income tax services work performed by Defendants/Counter Claimants John Manning ("Manning") and Daniel Steele ("Steele"). Plaintiff/Counter Defendant Profit Point Tax Technologies, Inc. ("PPTT") originally filed this action against Manning, Steele and DPAD Group, LLP ("DPAD"). ECF No. 27. Manning and Steele, in turn, filed counterclaims against PPTT and its sole shareholder, Patrick Sweet ("Sweet"). ECF No. 101.

Presently before the Court are two motions: (1) Manning and Steele's Motion for Summary Judgment on their Counterclaims,[1] ECF No. 259, and (2) PPTT and Sweet's cross Motion for Summary Judgment, ECF No. 274.  For the reasons that follow, it is respectfully recommended that the Court deny both Motions for Summary Judgment as to the counterclaims.

## II.     REPORT

### A.  FACTUAL BACKGROUND

#### 1.  The Parties

PPTT is a service firm that works with companies to calculate income tax incentives for federal income tax purposes.  ECF No. 273 ¶ 1.  Sweet is the President, Chief Executive Officer, and sole shareholder of PPTT.  Id. ¶ 2.

Steele and Manning are tax professionals.  ECF No. 260 ¶ 11.  They provide tax services related to domestic activity deductions under Section 199 of the Internal Revenue Code ("Section 199") and other related services.  ECF No. 101 ¶ 20.

Steele became an independent contractor of PPTT in 2006 or 2007, and Manning became an independent contractor of PPTT in 2011.  ECF No. 273 ¶ 4.  Manning and Steele later formed their own tax services company, DPAD, in May 2015.  ECF No. 260 ¶ 37.

#### 2.  The Revenue Sharing Agreement

PPTT, Sweet, Manning and Steele entered into an oral Revenue Sharing Agreement ("RSA") around January 2011.  Id. ¶ 13.  The RSA governed how revenue generated from Manning and Steele's Section 199 tax services would be allocated and distributed.  Id.

---

[1] DPAD also joins this motion relative to Manning and Steele's counterclaims.  In addition, Manning, Steele and DPAD separately moved for summary judgment as to the direct claims against them.  ECF No. 258.  That motion is addressed in a separate Report and Recommendation, ECF No. 302.

Under the RSA, the percentage of fees due to Manning and Steele was based on their: (1) identification and pursuit of target corporations; (2) securing agreements to perform services for those target corporations; (3) work performed identifying tax savings opportunities for such corporations; (4) data collection; (5) tax computations; and (6) participating in Internal Revenue Service ("IRS") audits and appeals. Id. ¶ 14.

While parties to the RSA, Manning and Steele developed business, and PPTT entered into contracts with clients, or subcontracts with other firms ("alliance firms"), for the performance of Section 199 tax services on terms agreeable to Manning, Steele, Sweet and PPTT. Id. ¶ 22. When PPTT received fees from clients or alliance firms, it deposited them into a PPTT bank account controlled by Sweet. PPTT/Sweet paid any fees owed to Manning and Steele from this account. Id. ¶ 23.

Beginning around June 2013, the parties began to have disputes over fee splitting. Id. ¶ 35. Manning and Steele claim the RSA was amended in October 2013, so that they would receive 100% of fees that PPTT received on projects procured by Manning and/or Steele, unless Sweet actually procured the client or did tax services. Id. ¶ 36. PPTT and Sweet deny they agreed to any such amendment. ECF No. 292 ¶ 36.

### 3. The Release

The parties continued to disagree over fee splitting into 2014 and 2015, with Manning and Steele ultimately deciding to part ways with PPTT and Sweet and form their own company, DPAD, in early 2015. ECF No. 260 ¶ 37.

In April 2015, the parties began negotiations about fee splitting for open projects. Id. ¶ 68. This process resulted in PPTT, Sweet, Manning, Steele, and DPAD signing a Master Fee Splitting Agreement and Release (the "Release") on February 2, 2016, in which the parties expressed their

"desire to resolve all remaining fee splits on all projects that Manning and/or Steele have worked on as independent contractors for PPTT." Id.; ECF No. 263-24.[2]

Paragraph 1 of the Release states that "[w]ith the exception of the Rockwater Energy Project and the [Hershey 2014 Project] . . . Exhibit A correctly states (i) all of the remaining projects as to which Manning and/or Steele claim or may claim a fee from PPTT (the 'Listed Projects'); (ii) the estimated gross remaining fee due on each Listed Project (the 'Estimated Gross Remaining Fee'), (iii) the actual percentage of each gross remaining fee due Steele from PPTT, and (iv) the actual percentage of each gross remaining fee due Manning from PPTT." ECF No. 263-24 ¶ 1.

Under Paragraph 2 of the Release, PPTT was exclusively obligated to invoice clients for the fees subject to the Release, except that HIREtech was responsible for invoicing the Zimmer 2013 Project. Id. ¶ 2. Except for the Zimmer 2013 Project, PPTT was required to timely invoice the projects and pursue payments from these clients. Id.

Under Paragraph 3 of the Release, PPTT agreed that with respect to the projects subject to the Release, it would not propose to any client, or agree to, any reduction of an estimated gross remaining fee without the prior written consent of the other parties to the Release. Id. ¶ 3.

Under Paragraph 4 of the Release, as clients paid their gross remaining fees to PPTT, PPTT was required to distribute to Manning and Steele their agreed percentages within 5 business days by check made payable to DPAD. Id. ¶ 4.

In Paragraph 12 of the Release, the parties acknowledged that the Release, "does not resolve or release any claim any Party may have against any other Party in connection with the [Rockwater Energy Project] or the [Hershey 2014 Project]." Id. ¶ 12.

---

[2] The Release is signed by Manning, Steele and Sweet individually and on behalf of DPAD and PPTT. ECF No. 263-24 at 2, 5.

### 4.  Project Fees in Dispute

As this lawsuit reflects, the parties continued to have disputes over fees after signing the Release. Manning and Steele's counterclaims arise out of fees they are allegedly owed for tax services performed under the RSA on these five projects.  ECF No. 101.

#### a.  Hershey Projects

PPTT performed tax services for the Hershey Company ("Hershey") for the 2012, 2013 and 2014 tax years.  The parties dispute whether Manning and Steele brought Hershey to PPTT as a client under the RSA.  ECF No. 292 ¶¶ 27-31.[3]

#### i.  Hershey 2012 and 2013 Projects

Manning and Steele performed tax services for Hershey's 2012 and 2013 tax years (the "Hershey 2012 Project" and "Hershey 2013 Project").  ECF No. 110 ¶ 36.  The Release specified that the estimated gross remaining fee for the Hershey 2012 Project was $166,000.00, and that Manning and Steele each would receive 16.70 percent of that fee, or an estimated $27,722.00 each. ECF No. 260 ¶ 102.

The Release also specified that the estimated gross remaining fee for the Hershey 2013 Project was $99,567.00, and that both Manning and Steele each would receive 16.70 percent of that fee, or an estimated $16,628.00 each.  Id. ¶ 103.

At some point, PPTT requested payment from Hershey for the Hershey 2012 and 2013 Projects.  Id. ¶ 143.  In response, Michael Reeves ("Reeves"), Senior Director of Global Tax with Hershey, stated on August 21, 2016 that he "ha[d] no substantive documentation regarding the agreement, deliverables or project processes, including computation methodology and review,"

---

[3] Manning and Steele claim that Hershey is one of the corporations they pursued under the RSA, which included meeting with Hershey representatives, securing its business, and negotiating tax services and fee agreements, which were ultimately signed by PPTT and Hershey.  ECF No. 101 ¶ 33.  Sweet disputed that Manning and Steele brought Hershey in as a client, testifying that PPTT was doing work for Hershey before 2012.  ECF No. 292 ¶¶ 27-31.

and that he was "unable to verify any of the processes or approvals [Sweet] describe[d]" in prior correspondence. Id.

Sweet responded by email, saying that the "documentation of the Agreements were specified by the Hershey Company," and that, to the best of his knowledge, "the IRS ha[d] 'signed off' on all PPTT projects (both ETI and DPAD) at 100% (no adjustments)." ECF No. 263-32 at 4. Sweet also noted that "[t]he final payments for the 2012 and 2013 DPAD projects are to be made once the tax years close for these years (September 15, 2016 and September 15, 2017, respectfully)." Id.

Several days later, Reeves responded that he thought Hershey and PPTT "still may be able to resolve [their] respective differences" and requested a time to speak with Sweet. ECF No. 263-7 at 65. Sweet could not recall whether he subsequently spoke with Reeves or if he provided more information. Id. at 69.[4]

On September 30, 2016, James Turoff ("Turoff"), in-house counsel with Hershey, contacted Sweet, noting that Sweet and Reeves "ha[d] not had much success connecting" or "obtain[ing] substantive documentation, expected deliverables, etc. that [were] needed to address some of [Hershey's] concerns" and offered to speak to PPTT's lawyer. ECF No. 260 ¶ 145. Sweet testified that he referred the matter to his counsel, and that no lawsuit has since been filed to collect the fee. ECF No. 263-7 at 67.

---

[4] In their Concise Statement of Material Facts, Manning and Steele assert that Reeves emailed Sweet to say that PPTT and Hershey may "still be able to resolve [their] respective differences" and requested a time to talk, however, Sweet "apparently refused to even have a conversation with Reeves, let alone provide any substantive documentation regarding the Hershey 2012 Project and the Hershey 2014 Project." ECF No. 260 ¶ 144. As support, Manning and Steele cite Exhibit 32, an email exchange between Hershey representatives and Sweet; however, Exhibit 32 does not include this email. ECF No. 263-32. Sweet did testify to receiving this email from Reeves, but he did not say that he "refused" to speak with Reeves. ECF No. 263-7 at 65.

Fees for the Hershey 2012 Project and Hershey 2013 Project remain outstanding, and Manning and Steele have not been paid for this work.  ECF No. 260 ¶¶ 141-142.

### ii.  Hershey 2014 Project

PPTT also performed tax services work for Hershey's 2014 tax year (the "Hershey 2014 Project").  This is one of two projects (together with the Rockwater Energy Project), that was carved out of the Release. Id. ¶ 109.

Manning and Steele did not work on the Hershey 2014 Project, but they claim this project relied on tax positions they developed for the 2012 and 2013 tax years, and that they helped to secure this business. Id. ¶¶ 31-32.  Based on this, Manning and Steele claim they are entitled to $141,000 in fees for this project but have not been paid. Id. ¶ 130.  PPTT and Sweet dispute that Manning and Steele are entitled to any fees.  ECF No. 292 ¶¶ 130-31.

PPTT agreed to receive a reduced fee for the Hershey 2014 Project without Manning and Steele's consent.[5]  ECF No. 263-7 at 62-63.

### b.  Rockwater Energy Project

Manning and Steele were involved in securing and performing Section 199 tax services for Rockwater Energy Solutions ("Rockwater") with respect to its 2012 tax year (the "Rockwater Energy Project").  ECF No. 260 ¶ 34.  Based on this, Manning and Steele claim they are entitled to $48,000 of the estimated fee $60,000 fee on the Rockwater Energy Project. Id. ¶ 133.  PPTT does not dispute that Manning and Steele are entitled to fees if PPTT is paid for this project.  ECF No. 292 ¶ 132.  That said, PPTT has not collected fees on the Rockwater Energy Project.  ECF No. 260 ¶ 134.

---

[5] PPTT and Sweet deny that PPTT was required to obtain Manning and Steele's consent to agree to a fee reduction owed on PPTT projects under the RSA.  ECF No. 292 ¶ 24.

On October 30, 2018, Sweet emailed Rockwater to inquire into "the status of the 2012 audit." Id. ¶ 135. Later that day, Nick Swyka ("Swyka"), the Chief Financial Officer ("CFO") of Rockwater's successor entity, asked Sweet for more details about the audit. Id. On January 24, 2019, Sweet stated that PPTT "redetermined Rockwater's 2012 DPAD calculation[,]" attached two invoices, and identified the remaining fee of $60,000.00. Id.

On February 6, 2019, Swyka responded, stating that with the departure of relevant staff "and the long-aged nature of this invoice with a predecessor company, [Swyka] [could not] find support for it; but [Swyka] offer[ed] [Sweet] $30,000.00 paid this month if you send a revised invoice." Id.

Sweet testified that he did not send a revised invoice or accept the $30,000 offer. Id. ¶ 136; ECF No. 263-7 at 73. He could not recall if he sent any additional documents to support PPTT's claim for payment. ECF No. 263-7 at 73.

### c. Zimmer 2013 Project

Manning and Steele were involved in securing and performing Section 199 tax services for Zimmer with respect to its 2013 tax year (the "Zimmer 2013 Project"). ECF No. 260 ¶ 34. To date, PPTT, Manning and Steele have not received fees owed on this project.

Under the Release, HIREtech was required to invoice Zimmer for this project. ECF No. 263-24 ¶ 2. The parties agree that PPPT and Sweet have not spoken with individuals at HIREtech for about three or four years. ECF No. 292 ¶ 150. Manning and Steele claim that PPTT and Sweet disparaged them to HIREtech, based on false claims that Manning and Steele's work for HIREtech through DPAD was actually performed on behalf of PPTT. ECF No. 260 ¶ 149. However, PPTT and Sweet dispute that this occurred. ECF No. 292 ¶ 149.

## B. RELEVANT PROCEDURAL HISTORY

PPTT filed a Complaint in this action against Manning, Steele and DPAD on June 14, 2019.  ECF No. 1.  The operative First Amended Complaint was filed on March 6, 2020.  ECF No. 27.  PPTT's direct claims arise out of allegations that Manning, Steele and/or DPAD solicited a client, Exelon, under the RSA for which PPTT is entitled to fees, and they fraudulently concealed this fact when negotiating the Release.

### 1. Direct Claims

Following the disposition of two Motions to Dismiss, the following direct claims remain against Manning, Steele and/or DPAD: Breach of Contract (Count I); Breach of Fiduciary Duty (Count II); Unjust Enrichment (Count III); Intentional Misrepresentation (Count VI); and Negligent Misrepresentation (Count VII).  ECF Nos. 15, 23, 24, 32, 70 and 100.

### 2. Counterclaims

On August 11, 2020, Manning, Steele and DPAD filed an Answer to the First Amended Complaint, in which Manning and Steele asserted four counterclaims against Sweet and/or PPTT arising out of allegedly unpaid fees and/or failure to collect payment for the Hershey 2012, 2013 and 2014 projects; the Rockwater Energy Project; and the Zimmer 2013 Project.  ECF No. 101. Manning and Steele bring two counterclaims for breach of contract under the RSA (Count I) and Release (Count II).[6]  Id. ¶¶ 72-89.  Manning and Steele also bring two counterclaims in the alternative, Counts III and IV, in the event the Release is deemed invalid in this lawsuit.  Count III raises Manning and Steele's claims for breach of the Release in the alternative under the RSA.

---

[6] Manning and Steele originally brought the counterclaims in Counts I and II against PPTT in an Answer to Plaintiff's original Complaint on February 2, 2020.  ECF No. 25 at 17-19.  Manning and Steele reasserted these counterclaims in their Answer to Plaintiff's operative First Amended Complaint, in which they added Sweet as a Counter-Defendant to Count I and also added Counts III and IV.  ECF No. 101 at 19-24.

Count IV is an unjust enrichment claim.  Id. ¶¶ 90-101.  All counterclaims are brought against PPTT and Sweet except Count II, which is asserted against PPTT only.

PPTT and Sweet filed an Answer to the counterclaims on September 1, 2020.  ECF No. 110.

### 3.  Fact Discovery

After ruling on the Motions to Dismiss, the Court entered a Case Management Order, scheduling fact discovery to conclude by October 4, 2020.  ECF No. 37.  Various discovery disputes ensued, which led to the appointment of a special master, Michael J. Betts, to review motions relating to discovery and to submit reports and recommendations as to the disposition of those motions, and directing a forensic examination of Manning and Steele's devices.  ECF Nos. 112 and 187.

The fact discovery deadline was extended multiple times, until April 1, 2021.  ECF Nos. 125, 134, 150, 176.  After this time, however, limited discovery continued under the Court's direction relative to the forensic examination of Manning and Steele's devices.  ECF No. 235.  All fact discovery was completed by May 25, 2022.  ECF No. 247 ¶ 5.

Thereafter, DPAD, Manning and Steele filed a pending Motion for Summary Judgment, ECF No. 258, as to PPTT's direct claims in the First Amended Complaint.  The undersigned submitted a pending Report and Recommendation as to this motion.  ECF No. 302.

PPTT also filed a Motion for Sanctions, ECF No. 266, in which it requests default judgment on PPTT's direct claims against Manning, Steele and DPAD based on their alleged failure to comply with discovery obligations.  The Motion for Sanctions was referred to Special Master Betts to consider and submit a Report and Recommendation.  The Motion for Sanctions is pending.

### 4. Motions for Summary Judgment on Counterclaims

#### a. Manning and Steele's Motion for Summary Judgment (ECF No. 259)

Manning and Steele filed the instant Motion for Summary Judgment on Counterclaims, together with a Brief in Support.[7] ECF Nos. 259 and 262. Manning and Steele also filed a Concise Statement of Material Facts and supporting Appendix, which they offered in support of this Motion for Summary Judgment and their separately filed Motion for Summary Judgment on PPTT's direct claims in the First Amended Complaint. ECF Nos. 260 and 263.[8]

On September 26, 2022, PPTT and Sweet filed a Response in Opposition to the Motion for Summary Judgment. ECF No. 286. PPTT and Sweet also filed a Responsive Concise Statement of Material Facts, which included a Statement of Additional Facts. ECF No. 292.

Manning and Steele filed a Reply. ECF No. 294. PPTT and Sweet filed a Sur-Reply. ECF No. 298.

#### b. PPTT and Sweet's Motion for Summary Judgment (ECF No. 274)

PPTT and Sweet filed the instant Motion for Summary Judgment, Brief in Support, and Concise Statement of Material Facts on August 15, 2022. ECF Nos. 274, 275 and 276. This Motion for Summary Judgment is limited to the counterclaims of Manning and Steele.[9]

On September 26, 2022, Manning and Steele filed a Brief in Opposition and Response to the Concise Statement of Material Facts. ECF Nos. 283 and 284.

---

[7] DPAD also joins in this motion, and DPAD, Manning and Steele collectively request that the Court enter summary judgment as to "their counterclaims." ECF No. 259. However, only Manning and Steele have asserted counterclaims in this action. ECF No. 101 at 19-23.

[8] The parties also submitted a brief Joint Concise Statement of Material Facts on August 11, 2022, with no citations to the record. ECF No. 273.

[9] PPTT and Sweet also request the Court grant summary judgment in their favor as to DPAD's counterclaims, but DPAD has no counterclaims. See ECF No. 101 at 19-23.

PPTT and Sweet filed a Reply.  ECF No. 295.  Manning and Steele filed a Sur-Reply.  ECF No. 296.

The Motions for Summary Judgment on the counterclaims are now ripe for consideration.

## C.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof").  Thus, summary judgment is warranted where, "after adequate time for discovery and upon motion . . . a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of demonstrating to the Court that there is an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 322; Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Scott v.

Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Matreale v. N.J. Dep't of Mil. & Veterans Affairs, 487 F.3d 150, 152 (3d Cir. 2007); Woodside v. Sch. Dist. of Phila. Bd. of Educ., 248 F.3d 129, 130 (3d Cir. 2001).

### D. DISCUSSION

#### 1. Manning and Steele's Motion for Summary Judgment as to Counterclaims (ECF No. 259)

##### a. Count I: Breach of Contract (RSA)

In Count I, Manning and Steele claim that PPTT and Sweet breached the RSA with respect to the Hershey 2014 Project and Rockwater Energy Project because they failed to pay Manning and Steele the amounts they are owed for these projects or because they did not pursue payment from the clients or impermissibly agreed to a reduction in fees. ECF No. 101 ¶¶ 76-78.

Manning and Steele move for summary judgment as to Count I. ECF No. 259. The Court will address the parties' arguments by project. For the reasons that follow, the Motion for Summary Judgment should be denied as to Count I because there are material issues of fact that must be decided by a jury.

##### i. Hershey 2014 Project

In support of the Motion for Summary Judgment, Manning and Steele assert that PPTT and Sweet breached the RSA as to the Hershey 2014 Project. Manning and Steele argue that they were entitled to 30% of the fees under the RSA because they secured Hershey as a client for PPTT and worked with Hershey to identify Section 199 tax benefits. The Section 199 tax services that others

13

performed on the Hershey 2014 Project, they argue, relied extensively on tax positions that Manning and Steele developed for Hershey's 2012 and 2013 tax years. Nevertheless, they argue, PPTT and Sweet improperly paid no fees to Manning and Steele and negotiated a reduced rate without their consent. ECF No. 262 at 9-10; ECF No. 294 at 5-6.

In response, PPTT and Sweet argue that summary judgment is improper because this claim involves disputed questions of fact. Manning and Steele did not perform any calculations for the Hershey 2014 Project, they argue, and the RSA does not require payment for work that was performed for previous tax years (in this case, 2012 and 2013). PPTT and Sweet also argue that Hershey was already an existing PPTT client. ECF No. 286 at 2-4; ECF No. 298 at 2-3.

Upon review, the Court should not grant summary judgment on this basis. As PPTT and Sweet point out, there are disputed questions of fact that go to whether, and to what extent, Manning and Steele are owed fees for the Hershey 2014 Project under the RSA, including whether they procured Hershey as a client or performed tax services that were subject to the RSA. Because there are disputed questions of fact, the Court should deny the Motion for Summary Judgment on Count I relative to the Hershey 2014 Project.

### ii. Rockwater Energy Project

Manning and Steele also argue that the record establishes that PPTT and Sweet breached the RSA with respect to the Rockwater Energy Project. Under the RSA, Manning and Steele argue, they were entitled to 80% of the outstanding $60,000 fee. Manning and Steele contend that PPTT has not collected fees on this project based solely on its intentional conduct and failures, in violation of the RSA. On this point, Manning and Steele assert that Sweet failed to respond to Rockwater's request for additional documents and did not respond to its offer to pay a reduced fee of $30,0000. ECF No. 262 at 11-12; ECF No. 294 at 6-7.

14

In response, PPTT and Sweet argue that there are no fees to distribute because Rockwater never paid the amount owed, and they deny their collection efforts were deficient.  PPTT and Sweet point out that they invoiced Rockwater, and that Sweet contacted Rockwater's CFO to attempt to secure payment.  Based on this, PPTT and Sweet argue there are disputed questions of fact that preclude summary judgment.  ECF No. 286 at 4-5; ECF No. 298 at 3-4.

Upon review, the Court should find that there are disputed questions of fact that preclude summary judgment.  The parties agree that Manning and Steele are entitled to certain fees if Rockwater pays PPTT for this project, but that Rockwater never paid PPTT.  Whether PPTT and Sweet's efforts to collect payment from Rockwater complied with the terms of the RSA, and whether their allegedly deficient efforts caused the lack of payment, however, involve disputed questions of fact for the jury to decide.  See, e.g., Ins. Co. of Greater New York v. Fire Fighter Sales & Serv. Co., 120 F. Supp. 3d 499, 459 (W.D. Pa. 2015) (noting that "[w]hether causation has been established in a breach of contract action at the summary judgment stage is normally a question of fact for the jury," unless reasonable minds could not differ) (internal quotations and citations omitted).  Accordingly, Manning and Steele's Motion for Summary Judgment should be denied as to Count I relative to the Rockwater Energy Project.

### b.  Count II: Breach of Contract (Release)

In Count II, Manning and Steele claim that PPTT breached the terms of the Release in connection with fees owed for the Hershey 2012 Project, the Hershey 2013 Project, and the Zimmer 2013 Project.  Under the Release, Manning and Steele claim were entitled to fees for each of these projects but PPTT never paid them.  ECF No. 101 ¶ 84.  As for the Hershey 2012 and 2013 projects, Manning and Steele also claim that Manning and Steele did not sufficiently try to collect the fees owed.  Id. ¶ 86.

### i.  Hershey 2012 and 2013 Projects

In support of the Motion for Summary Judgment, Manning and Steele argue that the Release entitles them to fees for their work on the Hershey 2012 and 2013 Projects, and that PPTT never paid those fees.  Manning and Steele also assert that Sweet did not attempt in good faith to collect payment from Hershey, as required under the Release.  ECF No. 262 at 12-13; ECF No. 294 at 7-8.

In response, PPTT and Sweet argue that the record shows Sweet's sufficient efforts to collect these fees, pointing to testimony that he believed he turned over the documents Hershey requested and spoke with someone at Hershey, and that he referred this matter to his lawyer.  While PPTT never sued Hershey, PPTT and Sweet argue, it was not required to do so under the Release.  ECF No. 286 at 5-6; ECF No. 298 at 4-5.

Upon review, there is no dispute that PPTT did not receive payment from Hershey for these projects.  There are disputed questions of fact as to the sufficiency of PPTT's collection efforts. Therefore, the Motion for Summary Judgment should be denied on this basis.

### ii.  Zimmer 2013 Project

Finally, as to the Zimmer 2013 Project, Manning and Steele argue they were entitled to fees under the Release that they never received.  While HIREtech was responsible for invoicing this project and there is no evidence PPTT ever received fees for this project, Manning and Steele argue that PPTT has not contacted HIREtech in three or four years or tried to obtain this payment. Manning and Steele also argue that PPTT and Sweet "destroyed Manning and Steele's rights to receive payment on the Zimmer 2013 Project" by disparaging them to HIREtech.  In particular, Manning and Steele argue that PPTT and Sweet repeatedly, and falsely, claimed to HIREtech that

services Manning and Steele performed on behalf of DPAD were actually PPTT projects. ECF No. 262 at 13-14; ECF No. 294 at 8-9.

In response, PPTT and Sweet argue they have no contractual duty to collect fees for the Zimmer 2013 Project. PPTT and Sweet also argue that the claim of disparagement is baseless, but regardless, it is not relevant to whether PPTT was required to collect fees under the Release. ECF No. 286 at 6-7; ECF No. 298 at 5.

Upon review, the Court should deny the Motion for Summary Judgment. There is no evidence that PPTT received payment for this project. Although Manning and Steele argue that PPTT did not attempt to collect from Zimmer, it is not required to do so under the Release. Under the Release, HIREtech has to invoice and collect payment on this project. Therefore, there is no evidence of breach on this basis.

Manning and Steele also appear to argue that PPTT breached an implied covenant of good faith by disparaging them to HIREtech. Even assuming this is a plausible claim, it involves disputed questions of fact. PPTT and Sweet deny this disparagement occurred, pointing to the lack of any recent contact between PPTT and HIREtech. Accordingly, the Motion for Summary Judgment should not be granted as to the Zimmer 2013 Project.[10]

### 2. PPTT and Sweet's Motion for Summary Judgment as to Manning and Steele's Counterclaims (ECF No. 274)

In support of the cross Motion for Summary Judgment, PPTT and Sweet argue that Manning and Steele's counterclaims are all barred by Pennsylvania's four-year statute of limitations for breach of contract claims. ECF No. 275 at 4-8. As for Manning and Steele's claims

---

[10] Manning and Steele also argue that the Court should award pre-judgment and post-judgment interest on their claims. ECF No. 262 at 14. Because the Motion for Summary Judgment should be denied, it is premature to consider this issue.

in the alternative under Counts III and IV, PPTT and Sweet assert that these claims are not ripe because the Court has yet to determine whether the Release and RSA are valid. Id. at 8-10.

The Court will address these arguments by claim. For the reasons below, PPTT and Sweet's Motion for Summary Judgment as to the counterclaims should be denied.

### a. Count I: Breach of Contract (RSA)

In support of their Motion for Summary Judgment, PPTT and Sweet argue that Count I, relating to allegations they breached their obligations under the RSA by failing to pay or collect fees for the Hershey 2014 Project and Rockwater Energy Project, is barred by the statute of limitations. PPTT and Sweet argue that this claim accrued by the time the parties signed the Release on February 2, 2016 because: (1) the parties' carving these two projects out of the Release placed Manning and Steele on notice of a dispute over fees for these projects, and (2) this carve out was an anticipatory breach of any duty to pay. Alternatively, in their Reply, PPTT and Sweet argue that the Hershey 2014 Project claim accrued by October 2015, because that is when Manning and Steele claim that Hershey's fees were due. Because it has been more than four years since either date, PPTT and Sweet argue that Count I is untimely. PPTT and Sweet also argue that because the counterclaims are merely permissive, and not compulsory, this lawsuit did not toll the statute of limitations. ECF No. 275 at 5-7; ECF No. 295 at 1-6.

In response, Manning and Steele dispute that Count I accrued when the Release was signed. Rather, they argue, the Release simply carved those two projects out of the settlement. Manning and Steele also argue that it is improper to rely on an October 2015 payment deadline for the Hershey 2014 Project, given that PPTT and Sweet have disputed this fact, and it does not mean Hershey actually paid on this date. In any event, they argue, PPTT's filing this lawsuit on June

14, 2019 tolled the statute of limitations because these are, in fact, compulsory counterclaims. ECF No. 284 at 7-13; ECF No. 296 at 4-7.

Under Pennsylvania law, the statute of limitations for a breach of contract claim is four years. Pa. C.S. § 5525. A cause of action accrues at the time of breach, which is defined as a "non-performance of any contractual duty of immediate performance." Colonial Assur. Co. v. Mercantile & Gen. Reinsurance Co. Ltd., 297 F. Supp. 2d 764, 770 (E.D. Pa. 2003) (quoting Camenisch v. Allen, 44 A.2d 309, 310 (1945)). Statute of limitations is an affirmative defense, on which PPTT and Sweet bear the burden of proof. Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).

Upon review, PPTT and Sweet do not establish that Count I is barred by the statute of limitations. Although PPTT and Sweet argue that Count I accrued by either (1) the date of Release; or (2) October 2015 (for the Hershey 2014 Project), neither theory is supported here.

First, the evidence does not establish that Count I accrued by the date of the Release, February 2, 2016. There is no evidence that PPTT and Sweet breached any duty to pay or collect payment on either the Hershey 2014 Project or Rockwater Energy Project as of this date. Nor does the carve out provision itself represent an anticipatory breach of any obligation to pay; it simply reflects that the Release does not include these two projects.

PPTT and Sweet's reliance on the October 2015 accrual date is also unsupported. Although Manning and Steele have alleged that Hershey owed payment by October 2015, PPTT and Sweet have repeatedly denied this. ECF No. 110 ¶ 38; ECF No. 292 ¶ 128. Nor do they tie this proposed date to when PPTT or Sweet purportedly breached their obligations—either by failing to distribute any payment that PPTT received to Manning and Steele, or by not invoicing and pursuing payment from Hershey as required.

Because PPTT and Sweet do not show when Count I accrued, the Court cannot conclude Manning and Steele's claim is time barred.  Therefore, PPTT and Sweet's Motion for Summary Judgment should be denied as to Count I.

### b. Count II: Breach of Contract (Release)

PPTT and Sweet also argue that Count II, relating to allegations that PPTT breached its obligations under the Release in connection with payment or collection required for the Zimmer 2013 and Hershey 2012 and 2013 projects, is barred by the statute of limitations.  Given that these projects are included in the Release, PPTT and Sweet argue that Manning and Steele were aware of a potential cause of action to pursue fees for these projects by this date.  ECF No. 275 at 7-8.[11]

In response, Manning and Steele argue that the Release simply defined the parties' obligations for these projects; it did not result in the accrual of Manning and Steele's counterclaims for PPTT's subsequent breach of those obligations.  Manning and Steele point to alleged breaches that include PPTT's refusal to work with Hershey in good faith between August and October 2016 to collect payment, and their allegation that PPTT and Sweet disparaged them to HIREtech.  ECF No. 284 at 13-15.

Upon review, the Motion for Summary Judgment should be denied on this basis as to Count II.  PPTT and Sweet argue that this cause of action accrued when the Release was signed.  But a cause of action for breach of contract accrues on the date of breach, not on the date the underlying contract was formed.  Because PPTT and Sweet do not identify when any breach of the Release occurred, they have not established when this cause of action accrued.  Therefore, the Court cannot conclude this claim was untimely filed.  For these reasons, the Court should deny PPTT and Sweet's Motion for Summary Judgment as to Count II.

---

[11] Manning and Steele's argument that this lawsuit tolled the statute of limitations for their counterclaims also applies to Count II.

### b. Counts III and IV

Manning and Steele bring Counts III and IV in the alternative, in the event the Release is invalidated. In support of the Motion for Summary Judgment, PPTT and Sweet argue that these counterclaims are barred by the statute of limitations for the same reasons as Counts I and II. In the alternative, they argue that without a judicial determination of the validity of the RSA or Release, a "condition precedent to these claims has not been met and they are not ripe for adjudication at this time." ECF No. 275 at 8-9.

In response, Manning and Steele argue that it is premature to dismiss their counterclaims on this basis, given that Counts III and IV are premised on specific relief—invalidating the Release—that PPTT is seeking through its direct claims. ECF No. 284 at 15.

For the reasons discussed in the Report and Recommendation relative to Defendants' Motion for Summary Judgment on the First Amended Complaint, ECF No. 302, the Court should not invalidate the Release based on PPTT's allegations of fraud. Because Manning and Steele plead these claims only in the event the Release is voided, PPTT and Sweet's Motion for Summary Judgment as to Counts III and IV should be denied as moot.

### E. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Court deny Manning and Steele's Motion for Summary Judgment on their Counterclaims, ECF No. 259, and also deny PPTT and Sweet's cross Motion for Summary Judgment as to the counterclaims, ECF No. 274.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n. 7 (3d Cir. 2011).  Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Dated: January 23 , 2023                                Respectfully submitted,

                                                        MAUREEN P. KELLY
                                                        UNITED STATES MAGISTRATE JUDGE

cc:     Honorable William S. Stickman,
        United States District Judge

        All counsel of record via CM/ECF.