IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROFIT POINT TAX TECHNOLOGIES, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> DPAD GROUP, LLP, JOHN MANNING, and DANIEL STEELE, <br><br> *Defendants*. | Civil Action No. 2:19-cv-698 <br><br> Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

This long and acrimonious litigation appeared to have reached an amicable resolution when the parties agreed to settle the remaining claims.[1]  After months of attempting to finalize

---

[1]  Profit Point Tax Technologies, Inc. ("PPTT"), a service company that works with companies to calculate income tax incentives for federal income tax purposes, pursued claims against DPAD Group, LLP ("DPAD"), John Manning ("Manning"), and Daniel Steele ("Steele") (collectively, "Defendants") as a result of a dispute over who is owed fees for specialized income tax services work performed.  (ECF No. 27).  PPTT's claims (Count I – Breach of Contract against Manning and Steele; Count II – Breach of Fiduciary Duty against Manning and Steele; Count III – Unjust Enrichment against DPAD; Count VI – Intentional Misrepresentation against Defendants; and Count VII – Negligent Misrepresentation against Defendants) arose from Defendants' alleged usurpation of PPTT's business through the use of PPTT's confidential information and other resources in soliciting PPTT's clients.  Defendants' counterclaims against PPTT and its sole shareholder, Patrick Sweet ("Sweet"), arose out of allegedly unpaid fees on tax services projects – the Hershey 2012, 2013 and 2014 projects; the Rockwater Energy Project; and the Zimmer Project.  (ECF No. 101).  Manning and Steele brought two counterclaims for breach of contract under the January 2011 Revenue Sharing Agreement ("RSA") (Count I) and the February 2, 2016 Master Fee Splitting Agreement and Release (the "Release") (Count II). (ECF No. 101).  In the event the Release was deemed invalid, Manning and Steele also brought two counterclaims in the alternative (Counts III and IV).  All counterclaims were brought against PPTT and Sweet except Count II, which is only asserted against PPTT.  (*Id.*).

On February 27, 2023, the Court entered summary judgment in favor of Manning and Steele and against PPTT as to Counts I and II, in favor of DPAD and against PPTT as to Count

the settlement (and close this case), Manning and Steele filed a motion to enforce settlement (ECF No. 369).[2]  PPTT and Sweet opposed the motion.  (ECF No. 373).  The parties' dispute centers on whether the material terms of their putative settlement agreement required Manning and Steele to offer sworn affidavits with respect to disclosures of client information relating to whistleblower claims.  PPTT and Sweet believe that sworn affidavits are necessary.  Manning and Steele disagree.

The Court conducted a hearing/status conference with respect to the motion on August 15, 2024.  (ECF No. 381).  Although neither side presented oral testimony, the parties addressed the exhibits that were submitted in connection to the briefing on the motion.  It became clear to the Court that the parties' dispute centered on only one term--whether Manning and Steele complied with the requirement that they provide "[a]ttestation…related to whistleblower claims."  The Court permitted the parties to submit supplemental briefs and materials after the hearing.  Manning and Steele submitted with their supplemental brief the declarations that they issued relating to the whistleblower claims. (ECF Nos. 384-1 and 384-2).  PPTT and Sweet dispute that the declarations are sufficient because, they claim, "attestation" requires a sworn affidavit, not merely a declaration.  (ECF Nos. 386 and 397).  The crux of the parties' dispute is whether an "attestation" may be satisfied by a declaration, rather than an affidavit.  It is, ultimately, a question of the language of a contract, which is a question of law for the Court.  The

---

III, and in favor of Defendants and against PPTT at to Counts VI and VII in the First Amended Complaint.  It further held that only the breach of contract counterclaims – Count I (RSA) and Count II (Release) – would proceed to trial.  (ECF Nos. 311-313).  Counterclaim Counts III and IV were deemed moot by the Court as they were premised on specific relief – invalidating the Release – that PPTT sought on its direct claims.  (ECF No. 312).

[2] They also seek counsel fees incurred in connection with filing and litigating their motion on the basis that PPTT and Sweet "have engaged in dilatory conduct in refusing to sign the settlement agreement."  (ECF No. 369, p. 6).

Court finds that Defendants' declarations satisfy the requirement of an attestation.  The motion to enforce settlement will be granted.  The motion for attorneys fees and costs will be denied.

## I.   STANDARD OF REVIEW

The standard of review for a motion to enforce a settlement agreement is well established.[3]  "The stakes in summary enforcement of a settlement agreement and summary judgment on the merits of a claim are roughly the same—both deprive a party of his right to be heard in the litigation."  *Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991).  To prevail on a motion to enforce a settlement, the movant must demonstrate that there are no disputed material facts regarding the terms and existence of the settlement contract.  *Id.* at 1031–32.   A court "must treat all the non-movant's assertions as true, and 'when these assertions conflict with the movant, the former must receive the benefit of the doubt.'"  *Leonard v. Univ. of Del.*, 204 F. Supp. 2d 784, 786 (D. Del. 2002) (quoting *Tiernan*, 923 F.2d at 1032).   If material facts are in dispute as to the existence or terms of an agreement to settle, a court should not grant a motion to enforce a settlement agreement without holding an evidentiary hearing.  *Tiernan*, 923 F.2d at 1031.  By contrast, "no hearing is necessary where there is no dispute as to the existence of a settlement."  *Id.* (citing *Petty v. Timken Corp.*, 849 F.2d 130, 132 (4th Cir. 1988)).

## II.   ANALYSIS

Settlement agreements are construed according to traditional principles of contract law.  *Coltec Industries v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002) (citing *In Re Cendant Corp. Prides Litig.*, 233 F.3d 188, 193 (3d Cir. 2000)) ("basic contract principles ... apply to settlement agreements ....").   "Under Pennsylvania law, the test for enforceability of an agreement is

---

[3] "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."  *D.R. by M.R. v. East Brunswick Bd. Of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman,* 795 F.2d 291, 298-99 (3d Cir. 1986) (citations omitted).  Additionally, "there must be consideration on both sides." *Id.* "If there are matters yet to be determined about the essential terms of a settlement, there is no agreement to enforce." *Riviello v. First Nat. Cmty. Bank,* No. Civ. A. 3:10-2347, 2013 WL 1348259, *1 (M.D. Pa. Apr. 3, 2013) (citation omitted). However, "[i]t is well established that '[a] settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation.'" *Teva Pharm. Indus., Ltd. v. UnitedHealthcare Servs., Inc.,* No. Civ. 16-4870, 2018 WL 1898911, *15 (E.D. Pa. Apr. 20, 2018) (quoting *Endo Pharms. Inc. v. Mylan Pharms Inc.,* No. 11-717, 2014 WL 2532179, *9 (D Del. June 2, 2014) (applying Pennsylvania law)).

The parties agree that the terms of their putative settlement is generally governed by the terms of the November 29, 2023 email *drafted by Plaintiffs' counsel* and sent to counsel for Defendants.  This email is sometimes referred to by the parties as the "Material Terms."  They state as follows:

> Brad,
>
> Thank you for the call today.  I wanted to memorialize the main principles agreed to for settlement, with the express understanding there are details that need to be worked out in the process.
>
> 1. Defendant pre- settlement agreement discussion with counsel on Eckert case to determine status of that matter
> 2. Plaintiff to pay $200,000 to Defendants 30 days after the signed agreement
> 3. 50 % split of net Eckert proceeds (after attorney's fees and costs), no cap
> **4. Attestation by Manning and Steele related to whistleblower claims**
> 5. Agreed cooperation by Manning and Steele related to Eckert matter
> 6. Manning and Steele agree to dispose of PPTT client files/ data as identified
> 7. Manning and Steele right to consent of settlement of Eckert matter, with consent to not be unreasonably withheld

8. Confession of Judgment in the amount of attorney's fees request filed by Defendants (approx. $1M) /Administrative stay in the pending matter, to be dismissed upon conclusion of Eckert matter
9. Full mutual release of all claims/ appeals

Please let me know if anything does not match your understanding at this juncture.

Thanks,
Rachel

(ECF No. 374) (emphasis added).  The focus of the parties' current dispute is how (or whether) the attestation requirement is satisfied.  To be clear, the parties do not claim, as a matter of fact, that there was some understanding outside the four corners of the Material Terms as to the meaning of "attestation."[4]  The focus of the parties' dispute as to Material Term No. 4 is whether it requires a sworn affidavit to satisfy.  This is the sole issue before the Court.[5]

    1)    **Under federal law, a declaration is the functional equivalent of an affidavit.**

---

[4] PPTT and Sweet's counsel (the author of the Material Terms) focused her argument on the plain meaning of "attestation" and how it was interpreted by Sweet, contending that he construed the term to require a sworn statement: "So what he wanted was a sworn statement and attestation, I think, whether it is an affidavit or other, is a sworn statement in some type of form, as I've always understood it." (08/15/2024 Motion Hearing Transcript, p. 12).  Counsel further clarified, and Sweet confirmed: "So he is looking for a statement under oath, none of the information, whether from prospective clients or current or then-current clients was disclosed by them, because when they left, they took a lot of the data that they had had at PPTT." (*Id.* at 13).

[5] To be clear, the Court recognizes that PPTT and Sweet's submissions appear to broaden the inquiry beyond the question of whether Material Term No. 4 requires a statement under oath to address the question of generalized disclosures of PPTT clients' (or prospective clients') information. But the parties' putative agreement—drafted by Sweet's counsel—was not so broad.  It requires only an attestation "related to whistleblower claims." (ECF No. 374).  Other than "attestation," the key term in Material Term No. 4 is "whistleblower claims."  There is no mention of generalized disclosures of client information outside the whistleblower context.  (*Id.*).  The Court will focus its analysis *only* on how the actual terms of Material Term No. 4 may be satisfied.  It will not allow PPTT and Sweet to broaden the scope of Material Term No. 4 beyond the plain language drafted by PPTT and Sweet.

The parties' arguments focus on whether the "attestation" contemplated by Material Term No. 4 requires a sworn affidavit, or whether the term is satisfied by the declarations that Steele and Manning submitted.  The declarations cite to 28 U.S.C. § 1746, aver that the declarant has not and will not file a whistleblower claim against any PPTT client or prospective client, and further aver that the declarant is not aware of any whistleblower claim that has been or will be filed relating to any PPTT client or prospective client.  (ECF Nos. 384-1 and 384-2).  The declarations both state: "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief." (*Id.*).  The Court holds that under federal law there is no functional difference between the declarations submitted by Steele and Manning and a sworn affidavit.

The declarations of Steele and Manning purport to be made upon penalty of perjury pursuant to 28 U.S.C. § 1746.  That statute provides that a declaration executed under its terms will have the same effect as an affidavit and will fully satisfy any requirement under law, rule, regulation, or order that a statement be supported by a statement under the penalty of perjury:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:
>
> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date). (Signature)".

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature)".

28 U.S.C.A. § 1746.  Provided that a declaration contains the language required by § 1746, that it is made "under penalty of perjury," it will satisfy any verification requirement even if the witness was not formally sworn.  *Kersting v. United States*, 865 F. Supp. 669, 676 (D. Haw. 1994) ("Plaintiffs assert that these unsworn declarations should not be considered by the court because they do not meet the verification requirements of 28 U.S.C. § 1746 and, consequently, are not subject—despite their use of the phrase "under penalty of perjury"—to the penalty of perjury. This argument is wholly without merit. As long as an unsworn declaration contains the phrase "under penalty of perjury" and states that the document is true, the verification requirements of 28 U.S.C. § 1746 are satisfied." (citations omitted)).  Indeed, "[o]ne who subscribes to a false statement under penalty of perjury pursuant to section 1746 may be charged with perjury under 18 U.S.C.A. § 1621, just as if the statement were made under oath." *Dickinson v. Wainwright*, 626 F.2d 1184, 1186 (5th Cir. 1980).  Indeed, 18 U.S.C. § 1621 specifically provides in the definition of perjury:

> Whoever --
>
> \*     \*     \*
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;
>
> is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States.

18 U.S.C. § 1621.

There is no question that the declarations submitted by Manning and Steele satisfy the requirements of § 1746. They have the same legal effect as an affidavit. If, for example, it would be demonstrated that the declarations contain information that the declarant "does not believe to be true," Manning and/or Steele could be charged with perjury. The Court holds, therefore, that even if the term "attestation" required a sworn affidavit, the submission of a declaration made under § 1746 would satisfy that requirement.

2)   **Even if a declaration was not the functional equivalent of an affidavit, nothing in the term "attestation" requires the execution of a formal affidavit under oath.**

As stated above, settlement agreements are treated as contracts and are interpreted according to "traditional precepts of contract construction." *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 238 (3d Cir. 1995) (citation omitted); *see also Williams v. Metzler*, 132 F.3d 937, 946 (3d. Cir. 1997) (stating, "[b]asic contract principles apply to settlement agreements." (citation omitted). Under traditional canons of contract interpretation, "[w]hen terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning." *Lamb v. CVS Pharmacy LLC*, 704 F. Supp. 3d 606, 615 (E.D. Pa. 2023) (citations omitted). The parties' dispute centers on the meaning of the word "attestation." The parties did not include in their list of Material Terms any specific definition of the word. The Court must, therefore, apply its natural, plain, and ordinary meaning.

The Merriam-Webster dictionary defines "attestation" as "[a]n act or instance of attesting something: such as (a) a proving of the existence of something through evidence, (b) an official verification of something as true or authentic; the proof or evidence by which something (such as the usage of a word) is attested." *Attestation*, MERRIAM-WEBSTER DICTIONARY (11th ed. 2023). The Oxford dictionary defines "attestation" as "The action of bearing witness; the testimony

8

borne; evidence, proof." *Attestation*, Oxford English Dictionary (2d ed. 1989). Black's Law Dictionary defines "attestation" within the definition of "attest" as "to bear witness; testify; to affirm to be true or genuine; to authenticate by signing as a witness." *Attest*, Black's Law Dictionary (11[th] ed. 2019). None of these ordinary usage definitions contemplates a requirement of being formally sworn under oath.

In the absence of a specific definition, the Court is required to interpret the term "attestation" as included in Material Term No. 4 according to its ordinary usage. Its ordinary usage does not include a requirement that there be a statement under oath. Material Term No. 4 was drafted by PPTT and Sweet's attorney and sent to Manning and Steele's attorney for approval. The Court will hold PPTT and Sweet to the term that they, through counsel drafted, as contract terms should be interpreted against the drafter. *Strategic Capital Inv., LLC v. Bill Miller Equip.Sales, Inc.,* No. CV 17-2174, 2019 WL 331046, *9 (E.D. Pa. Jan. 24, 2019) (citing *Meeting House Lane, Ltd. V. Melso*, 628 A.2d 854, 858 (Pa. Super. 1993)). The term that PPTT and Sweet proposed, "attestation," does not require a statement sworn under oath. The Court will not insert that requirement into the parties' agreement when they (through the terms drafted by PPTT and Sweet) did not do so. There is no requirement for a sworn affidavit. Moreover, the Court holds that the declarations submitted by Manning and Steele are sufficient to serve as an "attestation" as contemplated by the language of Material Term No. 4.

## III.   Conclusion

"It is well established that '[a] settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation.'" *Teva Pharm. Indus., Ltd.*, 2018 WL 1898911, *15. This is exactly what the November 29, 2023, Material Terms, drafted by PPTT and Sweet's counsel did. While leaving some "details" to be

"worked out," the Material Terms represented the essential settlement terms between the parties. The dispute at bar concerns only one of those terms (Material Term No. 4) and, specifically, what is required to satisfy the term "attestation." The Court holds that the term "attestation" does not require a sworn statement. The Court further holds that the declarations submitted by Manning and Steele fall within the definition of "attestation" set forth in Material Term No. 4. This was the only dispute between the parties with respect to the putative settlement. As such, the Court will grant Manning and Steele's motion to enforce the settlement agreement and order the parties to finalize the memorialization of their settlement and comply with the terms thereof.

The Court is cognizant of Defendants' frustration with this case spanning five years and its belief that PPTT and Sweet seek only to delay their payment obligations. But it will not, at this point, award attorney fees and costs to Defendants for the litigation of their motion to enforce the settlement agreement. While Defendants generally allege dilatory tactics and cite to Pennsylvania statutes,[6] they have not brought a motion for sanctions under the Federal Rules of Civil Procedure. The Court does not have sufficient information before it to definitively conclude that PPTT and Sweet displayed dilatory conduct in disputing Material Term No. 4.

An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

10/7/24
Date

---

[6] 42 Pa.C.S.A. § 2503(7) states that "any participant [may be] awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter."